(No. 30805.— )
HATTIE HOWLETT, Appellant, *vs.* LENA DOGLIO *et al.,*
Appellees.

*Opinion filed January 19, 1949.*

HAROLD BROVERMAN, and SCOTT HOOVER, both of Taylorville, for appellant.

HERSHEY & BLISS, of Taylorville, and EKERN, MEYERS & MATHIAS, of Chicago, (DONALD L. THOMPSON, of counsel,) for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

This appeal presents for decision the construction of section 14 of the Liquor Control Act, commonly known and herein referred to as the Dram Shop Act, (Ill. Rev. Stat. 1947, chap. 43, par. 135,) which, so far as relevant, provides, "Every husband, wife, child, parent, guardian, employer or other person, who shall be injured, in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving alcoholic liquor, have caused the intoxication, in whole or in part, of such person; and any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that alcoholic liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving alcoholic liquors aforesaid, for all damages sustained, and for exemplary damages."

From the pleadings and the evidence it appears that, on July 10, 1946, Lena Doglio and Irene Giacopazzi were each engaged in the business of operating taverns in Christian County, known as "Lena's tavern" and "Louie's Tavern," respectively. Both women sold and served alcoholic liquor at retail under licenses issued by the county and the State. On the day named, Mannis McGarvey was served several drinks of intoxicating liquor in each of the taverns by the respective proprietors and, as a direct and proximate result, became intoxicated. McGarvey, while under the influence

of the intoxicants imbibed in the taverns of defendants, operated an automobile on State Route No. 104, in Christian County, proceeding in an easterly direction. At the same time, Dorothy M. Lawler was riding as a passenger in an automobile on the same highway in a westerly direction. The two automobiles collided at a point near the eastern edge of the village of Kincaid when McGarvey, still under the influence of the intoxicating alcoholic liquor, proceeding in the left-hand lane, drove his automobile directly into the path of the automobile in which Dorothy Lawler was riding. She sustained fatal injuries.

By her complaint filed in the circuit court of Christian County on January 2, 1947, the plaintiff, Hattie Howlett, mother of Dorothy M. Lawler, charged that the death of her daughter was the direct and proximate result of McGarvey's intoxication which, in turn, had resulted from his drinking intoxicating liquor in the taverns of the defendants, Lena Doglio and Irene Giacopazzi, and that "as a direct and proximate result of the death of Dorothy M. Lawler, the plaintiff, Hattie Howlett, has been damaged in her property in the sum of Ten Thousand ($10,000) Dollars," as against each defendant. Answering, defendants denied the material allegations of the complaint and, specifically, that plaintiff was entitled to recover damages in any amount against them.

The testimony of plaintiff is the only evidence bearing upon her claim for damages. She testified that her daughter, Dorothy Lawler, was eighteen years of age at the time of her death, unmarried, and had been living with her; that she had been employed at the "telephone office" since Christmas, 1945, and that she was industrious, assisted with the household duties and "didn't throw her money away." It also appears that Dorothy Lawler had previously worked with the telephone company and, also, in a drugstore and a variety store in Taylorville. Defendants offered no evidence in their own behalf, resting their de-

fense upon the proposition that plaintiff suffered no "property" damage from her daughter's death.

At the conclusion of plaintiff's evidence, defendants' motions for a directed verdict were denied. The jury returned verdicts in favor of plaintiff and against each defendant for $3000. Judgments were entered on the verdicts. Motions for judgment notwithstanding the verdicts and for a new trial were made and denied. Upon an appeal prosecuted by defendants to the Appellate Court for the Third District, the judgments were reversed. (334 Ill. App. 512.) We have granted plaintiff's petition for leave to appeal.

Plaintiff did not allege, that, as the result of her daughter's death, she was injured "in person" or her "means of support." Her claim against each defendant was limited to damage "in her property." To sustain the judgment of the Appellate Court, defendants maintain that the injury to "property" for which recovery is allowed under the ameliorative provisions of the Dram Shop Act is limited to injury to tangible real or personal property and does not include "pecuniary injuries" resultant from death or wrongful act, as contemplated in the Injuries Act, commonly known as the Wrongful Death Act. In particular, defendants urge that when death results from the intoxication of another person, as here, a dependent person has no remedy against a tavern keeper under the Dram Shop Act except for loss to means of support, and that an action for injury to "means of support" is not an action for injury "in property." Plaintiff concedes that the person or the body of a human being is not property, stating she does not contend that human life, *per se,* is property. Her theory, briefly stated, is that the interest which nature and our form of society gives to each person in his lineal next of kin is "property," within the purview of the Dram Shop Act. She asserts, without citation of authority, that the law has long recognized that each individual has a definite interest or "stake," real or potential, in his lineal next of kin; that

anyone of the lineal next of kin of every person may be presently, or in the future, a source of financial protection and welfare; that one may, at any time, fall upon evil days and, of necessity, turn to parents or children for aid, and, on the other hand, in the future, may conceivably inherit a substantial sum of money from a parent, grandparent or child if the person is allowed to live out his reasonable life expectancy.

Plaintiff has recourse to section 2 of the Wrongful Death Act which provides that actions for causing death by wrongful act, neglect or default, shall be brought by and in the names of the personal representatives of the deceased person; that the amount recovered shall be for the exclusive benefit of the widow and next of kin of the decedent and that, in every action, the jurors may award such damages as they shall deem a fair and just compensation with reference to the "pecuniary injuries" resulting from the wrongful death, to the wife and next of kin. (Ill. Rev. Stat. 1947, chap. 70, par. 2.) In cases arising under the Wrongful Death Act, if the next of kin are lineal kinsmen of the deceased, a presumption of pecuniary loss obtains from the relationship, alone, sufficient to sustain a verdict and judgment awarding substantial damages, without proof of actual loss. (*Wilcox* v. *Bierd,* 330 Ill. 571; *Dukeman* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 237 Ill. 104; *Grace & Hyde Co.* v. *Strong,* 224 Ill. 630.) The damages to collateral kindred, however, are only such actual damages as are proved. (*Rost* v. *Noble & Co.,* 316 Ill. 357; *Rhoads* v. *Chicago and Alton Railroad Co.* 227 Ill. 328; *Chicago, Peoria and St. Louis Railroad Co.* v. *Woolridge,* 174 Ill. 330.) Stated somewhat differently, "pecuniary injuries" are suffered by a widow and next of kin where the latter are lineal kindred of the deceased, irrespective of monetary damage, but are not necessarily sustained by collateral kin. The expression "pecuniary injuries," employed in the Wrongful Death Act, refers to a measure-

ment of damages and is not synonymous with "injury in property," appearing in the Dram Shop Act. As pointedly observed in *Michigan Central Railroad Co.* v. *Vreeland,* 227 U. S. 59, "A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, 'not only to express the character of the loss of the beneficial plaintiff which is the foundation of recovery, but also to discriminate between a material loss which is susceptible of pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation.' Patterson, Railway Accident Law, par. 49."

The basic purposes and objectives of the Dram Shop Act and the Wrongful Death Act are essentially different. The latter affords a remedy for the benefit of widows and next of kin for "pecuniary injuries." Section 14 of the Dram Shop Act creates a right of action in favor of, and enumerates three remedies for, parents, among others, who become injured "in person or property, or means of support," against persons who, by selling or giving alcoholic liquor, cause the intoxication, in whole or in part, of the person responsible for injuries of the character quoted. The General Assembly did not see fit to include within the provisions of section 14 a remedy for "pecuniary injuries," as provided by the Wrongful Death Act. The statute itself proclaims its purpose in section 1, which declares that the act shall be liberally construed, to the end that the health, safety and welfare of the People of this State shall be protected and temperance in the consumption of alcoholic liquors fostered and promoted by sound and careful control and regulation of their manufacture, sale and distribution. (Ill. Rev. Stat. 1947, chap. 43, par. 94.) To accomplish this objective, section 14 creates rights of action in favor of every husband, wife, child, parent, guardian, employer and other person, who shall be injured, "in person or prop-

erty, or means of support," against tavern keepers, owners and lessees under the conditions described, not only for all damages sustained but, also, for exemplary damages. An action is also given to anyone who may, in like manner, be injured "in consequence" of the intoxication of anyone, whether habitual or otherwise, against the parties causing the intoxication. In other words, an action lies for the direct damage done by the drunken person as well as damages arising in consequence of his intoxication. *King* v. *Haley*, 86 Ill. 106.

It was not an actionable tort at common law either to sell or give intoxicating liquor to "a strong and able-bodied man," and such an act was not deemed to be culpable negligence imposing liability for damages upon the vendor or donor of the liquor. (*Cruse* v. *Aden*, 127 Ill. 231.) Although the Dram Shop Act is penal in character and should be strictly construed, (*Cruse* v. *Aden*, 127 Ill. 231; *Meidel* v. *Anthis*, 71 Ill. 241,) the legislation is, at the same time, remedial and should be so construed as to suppress the mischief and advance the remedy. (*Economy Auto Ins. Co.* v. *Brown*, 334 Ill. App. 579; *Klopp* v. *Benevolent Protective Order of Elks, Lodge No. 281*, 309 Ill. App. 145; *Hyba* v. *C. A. Horneman, Inc.* 302 Ill. App. 143.) The liability imposed and the nature of the damages recoverable is of statutory origin, and is expressly and exclusively defined in the Dram Shop Act. As observed in *Sharpley* v. *Brown*, 43 Hun. (N.Y.) 374, "This cause of action was unknown to the common law, and cannot be made analogous to other actions." The injuries for which damages may be recovered being enumerated in the statute, it follows that recovery must be limited to the classes of injury specified in the law or fairly within its terms. (*Brantigam* v. *While*, 73 Ill. 561; *Albrecht* v. *Walker*, 73 Ill. 69; *Meidel* v. *Anthis*, 71 Ill. 241.) Here, the statute provides a right of action for injuries "in person or property, or means of support." In many, if not all, instances,

actions brought under the act have been predicated upon injury to "means of support" resulting from the husband's loss of earning power or his death. *Flynn* v. *Fogarty*, 106 Ill. 263; *Hapenny* v. *Huffman*, 184 Ill. App. 351, and *Karau* v. *Pease*, 45 Ill. App. 382, are illustrative.

The manifest purpose of the Wrongful Death Act is to grant an action for the exclusive benefit of the widow or next of kin of the deceased person. An action cannot be maintained under our Wrongful Death Act except in cases where the injured party himself could have maintained the action. At the common law, there was no right of recovery after the death of the injured person. The cause of action perished concurrently with the death of the injured party. Under the Wrongful Death Act, creating an action in favor of the personal representative against anyone causing death of a person by wrongful act, no action will lie unless the decedent could have recovered for the wrongful act in the event death had not ensued. The Dram Shop Act contains no such restrictions. To maintain an action under this statute against the vendor of liquor it is not necessary that an action could also be brought against the intoxicated person. Nor can the personal representative of one whose death is caused by intoxication maintain an action against the persons wrongfully selling him the liquor which produced his intoxication. (*Hackett* v. *Smelsley*, 77 Ill. 109.) Exemplary damages are permitted under the Dram Shop Act and, in consequence, contributory negligence of the deceased does not constitute a bar to recovery. Contributory negligence is, of course, a bar to recovery under the Wrongful Death Act. In short, the Wrongful Death Act and the Dram Shop Act are not only separate and distinct but are based upon different powers of the State. The rights created by the two statutes do not rest upon the same basis. *O'Connor* v. *Rathje*, 368 Ill. 83.

Reference is made, as in the Appellate Court, to *Stevens* v. *Cheney*, 36 Hun. (N.Y.) 1. There, the plaintiff brought

an action against those selling intoxicating liquor to his adult son who, as a result of becoming intoxicated, sustained accidental injuries rendering necessary the amputation of his legs. Holding that the father was not entitled to recover damages, the New York Court of Appeals observed: "The statute provides that 'every husband, wife, child, parent, guardian, employer or other person who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her name against any person or persons who shall, by selling or giving away intoxicating liquors, have caused the intoxication in whole or in part of such person or persons, * * * In order to recover, however, he must establish the fact that he has been injured either in his person, property or means of support. In this case there is no claim that the plaintiff has been injured in his person, and there is no evidence tending to show that he has been injured in his property. An injury to property is an actionable act whereby the estate of another is lessened other than a personal injury or the breach of a contract. [Citation] It was the plaintiff's son that was injured, and the father has no property in the son. If it had been his horse or cow * * * that was injured, then it would be an injury to property."

Application of basic principles of statutory construction forbids an enlargement of the classification of actionable injuries under the Dram Shop Act. A corollary to the rule that the enumeration of certain things in a statute implies the exclusion of all other things is that all exceptions or restrictions other than those designated are excluded under the rule *expressio unius exclusio alterius*. (*In re Estate of Tilliski,* 390 Ill. 273.) In particular, had the General Assembly intended to authorize an action for "pecuniary injuries," as expressly provided for in the Wrongful Death Act, it undoubtedly would have employed appropriate lan-

guage to accomplish this purpose. In the absence of such a provision, we are not warranted, under the guise of statutory construction, in extending the commonly accepted meaning of injuries to property beyond injuries to tangible real or personal property. The word "property," in law, is not the material object itself, but it is the right and interest or domination which is rightfully and lawfully obtained over the material object, with the unrestricted right to its use, enjoyment and disposition, either limited or unlimited in duration. (*Shedd* v. *Patterson*, 312 Ill. 371.) Admittedly, plaintiff did not show any injury to any tangible real or personal property belonging to her. This being so, she did not sustain an injury "in her property," within either the ordinary and accepted meaning of the word or the contemplation of section 14 of the Dram Shop Act.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*